IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PEBBLE LIMITED PARTNERSHIP and ALASKA PENINSULA CORPORATION,<br><br>                     Plaintiffs,<br><br>   and<br><br>STATE OF ALASKA,<br><br>                     Intervenor-Plaintiff,<br>   vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and DENNIS J. McLERRAN, in his official capacity as Regional Administrator of EPA Region 10,<br><br>                     Defendants,<br><br>   and<br><br>UNITED TRIBES OF BRISTOL BAY, and NUNAMTA AULUKESTAI, and NATURAL RESOURCES DEFENSE COUNCIL, and BRISTOL BAY NATIVE CORPORATION, and TROUT UNLIMITED, INC.,<br><br>                     Intervenor-Defendants. | O R D E R<br><br>No. 3:14-cv-0097-HRH |

## Motions to Dismiss[1]

Defendants and intervenor-defendants move to dismiss plaintiff's and intervenor-plaintiff's complaints. These motions are opposed. Oral argument was requested and has been heard.

---

[1]Docket Nos. 150 & 155.

Background

Plaintiffs are Pebble Limited Partnership (Pebble Partnership) and Alaska Peninsula Corporation (APC). Intervenor-plaintiff is the State of Alaska. Defendants are the United States Environmental Protection Agency (EPA) and Dennis J. McLerran, in his official capacity as the Regional Administrator of EPA Region 10. Intervenor-defendants are the United Tribes of Bristol Bay, Nunamta Aulukestai, the Natural Resources Defense Council, the Bristol Bay Native Corporation, and Trout Unlimited, Inc.

"Pebble Partnership holds the mineral claims that comprise the Pebble deposit,"[2] which "is estimated to contain 80 billion pounds of copper, 5.6 billion pounds of molybdenum, and 107.4 million ounces of gold."[3] "The deposit is the largest undeveloped porphyry copper body in the world."[4] "APC is the surface estate owner of approximately 400,000 acres of land located in the Bristol Bay Watershed, including lands adjacent to the Pebble deposit."[5] The State of Alaska also owns land in the Bristol Bay Watershed.[6] In addition to the abundant mineral resources, "[t]he watersheds of Bristol Bay ... support a

---

[2] Amended Complaint [etc.] at 5, ¶ 9, Docket No. 22.

[3] Id. at 18, ¶ 53.

[4] Id.

[5] Id. at 6, ¶ 10.

[6] Complaint for Declaratory and Injunctive Relief at 11, ¶ 27, Docket No. 48.

-2-

world class and economically important commercial and sport fishery for salmon and other sportfish[.]"[7]

"Pebble Partnership has spent approximately $150 million conducting environmental studies of the Pebble deposit area."[8] Pebble Partnership "is reviewing the feasibility of a mine at Pebble, and has stated that it intends to submit permit applications to the relevant State and federal agencies."[9] One such permit would be a § 404 permit, although Pebble Partnership had yet to apply for a § 404 permit.[10]

Section 404(a) of the Clean Water Act (CWA) provides that "[t]he Secretary" of the Army, acting through the Corps of Engineers, "may issue permits, after notice and opportunity for public hearings for the discharge of dredged or fill material into the navigable waters at specified disposal sites." 33 U.S.C. § 1344(a). "The Secretary's authority to specify a disposal site is expressly made '[s]ubject to subsection (c) of [section 404].'" Mingo Logan Coal Co. v. U.S. E.P.A., 714 F.3d 608, 610 (C.A.D.C. 2013) (quoting 33 U.S.C. § 1344(b)). Section 404(c) provides that the EPA

> Administrator is authorized to prohibit the specification
> (including the withdrawal of specification) of any defined area

---

[7]February 28, 2014 Letter at 2, Exhibit 1, Amended Complaint [etc.], Docket No. 22.

[8]Amended Complaint [etc.] at 19, ¶ 55, Docket No. 22.

[9]Complaint for Declaratory and Injunctive Relief at 10, ¶ 23, Docket No. 48.

[10]Amended Complaint [etc.] at 19, ¶ 55, Docket No. 22.

> as a disposal site, and he is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines, after notice and opportunity for public hearings, that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife, or recreational areas.

33 U.S.C. § 1344(c).

In 1979, EPA promulgated regulations implementing § 404(c). The regulations provide that

> [u]nder section 404(c), the [EPA] Administrator may exercise a veto over the specification by the U.S. Army Corps of Engineers or the state[11] of a site for the discharge of dredged or fill material. <u>The Administrator may also prohibit the specification of a site under section 404(c) with regard to any existing or potential disposal site before a permit application has been submitted to or approved by the Corps or a state</u>.

40 C.F.R. § 231.1(a) (emphasis added).

"[I]f [a] Regional Administrator [RA] has reason to believe ... that an 'unacceptable adverse effect' could result from the ... use for specification of a defined area for the disposal of dredged or filled material," he may initiate proceedings under § 404(c) by notifying the District Engineer,[12] the owner of the site, and "the applicant, if any" that he

---

[11]Individual states can be given the authority to issue § 404 permits. 33 U.S.C. § 1344(h).

[12]Once the District Engineer has been notified that the RA "is considering exercising (continued...)

"intends to issue a public notice of a proposed determination to prohibit or withdraw the specification, or to deny, restrict or withdraw the use for specification, whichever the case may be, of any defined area as a disposal site." 40 C.F.R. § 231.3(a).

The owner of the site or applicant, if any, then has fifteen (15) days in which to demonstrate to the satisfaction of the RA "that no unacceptable adverse effect(s) will occur...." 40 C.F.R. § 231.3(a)(1). If no such determination is made or if "the District Engineer ... does not notify the Regional Administrator of his intent to take corrective action to prevent an unacceptable adverse effect satisfactory to the Regional Administrator," the RA "shall publish notice of a proposed determination...." 40 C.F.R. § 231.3(a)(2).

After notice of a proposed determination is published, the RA must "provide a comment period of not less than 30 or more than 60 days...." 40 C.F.R. § 231.4(a). Public hearings may also be held if there is sufficient public interest in the proposed determination. 40 C.F.R. § 231.4(b).

Within either 30 days of the public hearing, "or if no hearing was held, within 15 days after the expiration of the comment period", the RA must "either withdraw the proposed recommendation or prepare a recommended determination to prohibit or

---

[12](...continued)
section 404(c) authority with respect to a particular disposal site for which a permit application is pending but for which no permit has been issued, the District Engineer, in accordance with 33 CFR 325.8, shall not issue the permit until final action is taken under this part." 40 C.F.R. § 231.3(a)(2).

withdraw specification, or to deny, restrict, or withdraw the use for specification, of the disposal site because the discharge of dredged or fill material at such site would be likely to have an unacceptable adverse effect." 40 C.F.R. § 231.5(a).

If the RA withdraws the proposed recommendation, he must notify the EPA Administrator, who has ten (10) days in which to decide whether to review the RA's decision to withdraw. 40 C.F.R. § 231.5(c). If the EPA Administrator decides not to review the decision to withdraw, the RA provides notice that the proposed determination is being withdrawn and "[s]uch notice shall constitute final agency action." 40 C.F.R. § 231.5(c)(1).

If the EPA Administrator decides to review the decision to withdraw the proposed determination, or if the RA prepared a recommended determination to prohibit, or withdraw specification, or to deny, restrict, or withdraw the use for specification, the EPA Administrator has thirty (30) days to "initiate consultation with the Chief of Engineers, the owner of record, and, where applicable, the State and the applicant, if any." 40 C.F.R. § 231.6. "They shall have 15 days to notify the Administrator of their intent to take corrective action to prevent an unacceptable adverse effect(s)[.]" 40 C.F.R. § 231.6. The EPA Administrator has sixty (60) days in which to "make a final determination affirming, modifying, or rescinding the recommended determination." 40 C.F.R. § 231.6. "For purposes of judicial review," the EPA Administrator's "final determination constitutes final agency action under section 404(c) of the CWA." 40 C.F.R. § 231.6.

On February 28, 2014, defendant McLerran advised Pebble Partnership, the State, and the Corps that EPA Region 10 had "decided to proceed under its Clean Water Act section 404(c) regulations to review potential adverse environmental effects of discharges of dredged and fill material associated with mining the Pebble deposit in southwest Alaska" and that "EPA Region 10 is beginning a section 404(c) review...."[13] McLerran explained that EPA Region 10 was "taking this step because it has reason to believe that porphyry copper mining of the scale contemplated at the Pebble Deposit would result in significant and unacceptable adverse effects to important fishery areas in the [Bristol Bay] watershed."[14] He further explained that EPA Region 10 would "examine whether the environmental effects of potential discharges associated with mining at the Pebble deposit are unacceptable under the CWA."[15] McLerran outlined the four basic steps in the § 404(c) process and advised that "[b]ased on the input that the EPA receives during any one of

---

[13]February 28, 2014 Letter at 1, Exhibit 1, Amended Complaint [etc.], Docket No. 22. The State alleges that in 2010, third parties asked EPA to take action pursuant to § 404(c). Complaint for Declaratory and Injunctive Relief at 11, ¶ 27, Docket No. 48. In response, EPA commenced a watershed assessment of the Bristol Bay watershed, which it issued in January 2014. Id. at 11, ¶ 27 & 13, ¶ 31.

[14]February 28, 2014 Letter at 1, Exhibit 1, Amended Complaint [etc.], Docket No. 22.

[15]Id.

these steps, the Agency could decide that further review under section 404(c) is not necessary."[16]

On July 18, 2014, EPA Region 10 published notice of its "proposed determination to restrict the use of certain waters in the Bristol Bay watershed for disposal of dredged or fill material associated with mining the Pebble deposit[.]"[17] EPA Region 10 scheduled seven public meetings during August 2014 and established a sixty-day comment period.[18]

Plaintiffs commenced this action on May 21, 2014, to challenge the February 28, 2014 letter, in which defendants advised that they were going to begin § 404(c) proceedings. Plaintiffs filed an amended complaint on June 26, 2014,[19] and intervenor-plaintiff filed its complaint on July 1, 2014.[20] Plaintiffs and intervenor-plaintiff assert two claims. In their first claim for relief, they allege that defendants exceeded their authority by initiating § 404(c) proceedings in the absence of a permit application. In their second claim for relief, they allege that defendants' initiation of § 404(c) proceedings violates the Alaska Statehood Act and The Cook Inlet Exchange Legislation.

---

[16]Id. at 2-3.

[17]Proposed Determination [etc.] at ES-1, attached to Notification Regarding Public Notice of Proposed Determination, Docket No. 116.

[18]Notification Regarding Public Notice of Proposed Determination at 3, Docket No. 116.

[19]Docket No. 22.

[20]Docket No. 48.

Pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, defendants and intervenor-defendants now move to dismiss plaintiffs' and intervenor-plaintiff's complaints.

Discussion

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. Plaintiffs and plaintiff-intervenor have alleged that defendants' initiation of § 404(c) proceedings was a final agency action,[21] the truth of which defendants and intervenor-defendants dispute. Thus, contrary to defendants' and intervenor-defendants' contentions, they are making a factual attack here. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id. And, "[t]he court need not presume the truthfulness of the plaintiff's allegations." Id.

---

[21]Amended Complaint [etc.] at 2, ¶ 1, Docket No. 22; Complaint for Declaratory and Injunctive Relief at 3, ¶ 4, Docket No. 48.

-9-

Case 3:14-cv-00097-HRH   Document 257   Filed 09/26/14   Page 9 of 15

Plaintiffs and intervenor-plaintiff allege that this court has jurisdiction pursuant to 28 U.S.C. § 1331 and the Administrative Procedure Act (APA).[22] Both of the claims asserted by each of plaintiffs and intervenor-plaintiff are founded upon and this court's jurisdiction depends upon the reviewability of defendants' decision to initiate § 404(c) proceedings. "As a general matter, district courts are empowered to review agency action by the Administrative Procedure Act and have federal question jurisdiction over such claims pursuant to 28 U.S.C. § 1331." Mamigonian v. Biggs, 710 F.3d 936, 941 (9th Cir. 2013) (internal citation omitted). "But for a court to hear a case like this pursuant to the APA, there must be 'final agency action for which there is no other adequate remedy in a court.'" Id. (quoting 5 U.S.C. § 704) (emphasis in original). "[F]inality is a jurisdictional requirement to obtaining judicial review under the APA...." Fairbanks North Star Borough v. U.S. Army Corps of Engineers, 543 F.3d 586, 591 (9th Cir. 2008).

> Two conditions must be satisfied for agency action to be final for purposes of the APA: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights and obligations have been determined, or from which legal consequences will flow."

Mamigonian, 710 F.3d at 942 (quoting Bennett v. Spear, 520 U.S. 154, 177–78 (1997)).

---

[22]Amended Complaint [etc.] at 5, ¶ 6, Docket No. 22; Complaint for Declaratory and Injunctive Relief at 5, ¶ 8, Docket No. 48.

"To meet the first prong of the Bennett test, the challenged agency action must represent the consummation of the agency's decisionmaking process." Oregon Natural Desert Ass'n v. U.S. Forest Service, 465 F.3d 977, 984 (9th Cir. 2006). "The action 'must not be of a merely tentative or interlocutory nature.'" Id. (quoting Bennett, 520 U.S. at 178). "Rather, [the court] look[s] to see whether the agency 'has rendered its last word on the matter' to determine whether an action is final...." Id. (quoting Whitman v. Am. Trucking Ass'n, 531 U.S. 457, 478 (2001)).

Defendants' decision to initiate § 404(c) proceedings does not meet the first prong of the Bennett test. The February 28, 2014 letter does not represent the consummation of the agency's decisionmaking process, but rather the commencement of the agency's decisionmaking process. The February 28, 2014 letter marked the beginning of the agency's decisionmaking process, as evidenced by the fact that EPA reserved the right to terminate the § 404(c) proceedings anywhere along the way. In the February 28, 2014 letter, McLerran expressly stated that "[b]ased on the input that the EPA receives during any of [the § 404(c)] steps, the Agency could decide that further review under section 404(c) is not necessary."[23] The APA provides that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. The February 28, 2014 letter initiates an intermediate action

---

[23]February 28, 2014 Letter at 3, Exhibit 1, Amended Complaint [etc.], Docket No. 22.

-11-

by the agency, which will be subject to review when the § 404(c) proceedings are complete. But, those proceedings are not yet complete. In short, the decision contained in the February 28, 2014 letter is not EPA's "'last word on the matter'...." Oregon Natural Desert Ass'n, 465 F.3d at 984 (quoting Whitman, 531 U.S. at 478); see also, Newport Galleria Group v. Deland, 618 F. Supp. 1179, 1180 (D.C.D.C. 1985) ("Because the Court finds that EPA's initiation of the section 404(c) proceedings is neither unlawful nor a final agency action, it is constrained to dismiss for lack of subject matter jurisdiction").

Plaintiffs' and plaintiff-intervenor's attempt to cast the decision to initiate § 404(c) proceedings as final agency action fails. They argue that the 1979 regulation that authorizes EPA to commence § 404(c) proceedings even if no permit application has been submitted represents the consummation of EPA's decisionmaking on the scope of its § 404(c) authority and that this "decision" was then applied to Pebble Partnership on February 28, 2014. This argument is nothing more than a thinly-disguised attempt to make a facial challenge to the 1979 § 404(c) regulations. But, plaintiffs and plaintiff-intervenor cannot bring a facial challenge to the regulations because such a challenge would be barred by the statute of limitations. See 28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"); Wind River Min. Corp. v. United States, 946 F.2d 710, 715 (9th Cir. 1991) ("if [a] person wishes to bring a policy-based facial challenge to the government's

-12-

decision, that too must be brought within six years of the decision"). Plaintiffs and intervenor-plaintiff can, as they point out, bring an "as applied challenge" to the § 404(c) regulations, as long as the challenge is brought within six years of the application of the regulations, but, as discussed above, the application of the § 404(c) regulations to plaintiffs is not yet final. While the § 404(c) regulations themselves are final, the February 28, 2014 letter marked the beginning of the application of the § 404(c) regulations to plaintiffs, not the end. If the court were to adopt plaintiffs' and intervenor-plaintiff's view that the decision to commence an agency proceeding was a "final" decision, then every decision an agency made to initiate a proceeding would be "final and complete," even though the agency might ultimately abandon the proceeding. Such an interpretation of "final agency action" would be absurd, and the court must avoid such interpretations. See Ma v. Ashcroft, 361 F.3d 553, 558 (9th Cir. 2004) ("statutory interpretations which would produce absurd results are to be avoided"). Plaintiffs and intervenor-plaintiff are not precluded from challenging the scope of EPA's authority under § 404(c), but they must wait to do so until the agency has completed the proceedings now underway and has applied the § 404(c) regulations to Pebble Partnership.

Defendants' decision to initiate § 404(c) proceedings also does not meet the second prong of the Bennett test. The decision to initiate § 404(c) proceedings creates neither rights nor obligations from which legal consequences will flow. "[A]gency action may [also] be

-13-

final if it has a 'direct and immediate ... effect on the day-to-day business of the subject party.'" Oregon Natural Desert Ass'n, 465 F.3d at 987 (quoting Ukiah Valley Medical Center v. F.T.C., 911 F.2d 261, 264 (9th Cir. 1990)). The initiation of § 404(c) proceedings cannot have an immediate effect on the day-to-day business of Pebble Partnership because it will not become subject to any restrictions until, and if, EPA issues a final § 404(c) decision imposing restrictions. Similarly, the initiation of § 404(c) proceedings to evaluate a proposed decision is not a determination of rights or obligations under the Alaska Statehood Act or the Cook Inlet Exchange Legislation.

Plaintiffs' argument that the decision to initiate § 404(c) proceedings altered the legal regime to which the Corps is subject fails. Plaintiffs argue that the initiation of § 404(c) proceedings effectively suspends the Corps' authority to issue § 404 permits. But because Pebble Partnership has not yet applied for a § 404 permit, there is little consequential effect flowing from defendants' decision to initiate § 404(c) proceedings. In the absence of a permit application, the alleged legal consequence is without substance. Moreover, contrary to plaintiff-intervenor's contention, the State will still have a role to play in the permitting process, if and when Pebble Partnership applies for a § 404 permit.

In sum, the decision to initiate § 404(c) proceedings fails both the first and second prong of the Bennett test and thus that decision cannot be considered final agency action. Because the decision to initiate § 404(c) proceedings does not constitute final agency action,

-14-

the court lacks subject matter jurisdiction over plaintiffs' and plaintiff-intervenor's complaints and the complaints are dismissed. Because the court is dismissing on this ground, it need not consider defendants' and intervenor-defendants' alternative argument that plaintiffs' and intervenor-plaintiff's claims are not ripe for review and intervenor-plaintiffs' alternative Rule 12(b)(6) argument that plaintiffs and intervenor-plaintiff failed to state a plausible claim in their second claims for relief.[24]

## Conclusion

Defendants' and intervenor-defendants' motions to dismiss are granted. All other pending motions are denied as moot.

The clerk of court shall enter judgment dismissing plaintiffs' and plaintiff-intervenor's complaints.

DATED at Anchorage, Alaska, this 26th day of September, 2014.

/s/ H. Russel Holland
United States District Judge

---

[24]Defendants had also advanced an exhaustion of remedies argument but they withdrew this argument in their reply brief. Defendants' Reply [etc.] at 2, n.1, Docket No. 250.

-15-